## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lyvly, Inc., and Tutus Holdings, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Lift Bridge Brewing Technologies LLC, <br><br> Defendant. | Case No. 25-cv-1835 (SRN/EMB) <br><br><br> **ORDER** |

Timothy M. Sullivan, TM Sullivan PLLC, 200 Southdale Center, Minneapolis, MN 55435, for Plaintiffs.

Scott S. Payzant, Lift Bridge Brewing Co., 1900 Tower Dr., Stillwater, MN 55082, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 48] filed by Defendant Lift Bridge Brewing Technologies LLC ("Lift Bridge"). The Court construes Plaintiffs' Response in Opposition to Summary Judgment [Doc. No. 57] as a Motion for Relief Under Rule 56(d). For the reasons below, the Court denies without prejudice Lift Bridge's Motion for Summary Judgment, and grants Plaintiffs' Motion for Relief Under Rule 56(d).

## I.      BACKGROUND

### A.      Factual Background

This action involves the alleged misappropriation of trade secrets related to cannabinoid-infused carbonated beverages.  Plaintiffs allege that prior to 2022, Lift Bridge owned proprietary rights to a process for producing such beverages.  (Am. Compl. [Doc. No. 10] ¶ 15.)  During the summer of 2022, Plaintiffs allege that Lift Bridge's owners, Bradley Glynn and Daniel Schwarz, collaborated with corporate officers from Plaintiff Tutus Holdings, Inc. ("Tutus"), Jon Wood and Andrew Heaberlin, to improve the trade secret manufacturing process and beverage recipes, with the aim of producing a commercially viable product.  (*Id.* ¶¶ 17–19.)

On April 27, 2022, Lift Bridge entered into a Letter of Intent ("LOI") with Tutus. (*Id.* ¶ 25.)  Lift Bridge represented that it had developed a "Proof of Concept (PoC) CBD[1]-infused beverage portfolio."  (*Id.* ¶ 26.)  In exchange for half ownership of Lyvly, Lift Bridge agreed to "contribute[] all PoC and assets (including all CBD formulations, recipes, quality systems, and trade secrets for the manufacturing, commercialization, and regulatory approvals)" to a new LLC, which would thereafter become a subsidiary of "Newco," a placeholder name for the entity later incorporated as Lyvly.  (*Id.* ¶ 27.)  The LOI contemplated that all existing intellectual property ("IP") or trade secrets for the PoC

---

[1] "CBD" refers to cannabidiol, an active ingredient in cannabis that is derived from the hemp plant, and which does not cause a high by itself and is not addictive.   Peter Grinspoon, M.D., Cannabidiol (CBD):  What we know and what we don't, Harvard Health Publishing,      Harvard      Medical      School      (Apr.      4,      2024), https://www.health.harvard.edu/blog/cannabidiol-cbd-what-we-know-and-what-we-dont-201808242496

products and portfolio would become the property of Newco, as well as future IP or trade secrets resulting from the collaboration of Lift Bridge and Tutus. (*Id.* ¶ 28.)

In a May 9, 2022 document called the "Written Action of the Board of Governors of Lift Bridge Brewing Technologies, LLC," (the "Resolution") Lift Bridge formally ceded ownership to Lyvly of the assets described in the LOI, identified in the LOI's Exhibit A, including twelve early-stage beverage formulas, manufacturing processes, and branding and design assets. (*Id.* ¶¶ 2, 30–33.)

Lyvly worked with Lift Bridge's owners over the summer of 2022 to "improve the recipes and process" needed to create "shelf-stable, high-quality cannabinoid-infused beverages," (*id.* ¶¶ 15–18), but the relationship deteriorated after Lift Bridge allegedly "began manufacturing and selling cannabinoid-infused beverages using Lyvly's trade secrets." (*Id.* ¶ 50.)

In 2025, Lyvly filed this lawsuit for misappropriation of trade secrets under state and federal law, and for fraudulent misrepresentation. (*Id.* ¶¶ 60–101.)

In their trade secrets claim, Plaintiffs allege that Lyvly acquired trade secrets concerning manufacturing processes and recipes from Lift Bridge that it understood to have actual and potential economic value. (*Id.* ¶¶ 70–72.) Plaintiffs contend that this trade secret compilation, now owned by Lyvly, is highly valuable, and derives value from the secrecy and confidentiality of the information. (*Id.* ¶¶ 73–76.) Plaintiffs assert that since at least October 2023, Lift Bridge has misappropriated those trade secrets by manufacturing and selling cannabinoid-infused beverages using Lyvly's trade secrets. (*Id.* ¶¶ 50–54.) Further, Plaintiffs allege that Lift Bridge has retained all of the information that Plaintiffs

contributed and developed for making a commercially viable line of cannabinoid-infused beverages, and is using this information to enrich itself to the detriment of Lyvly. (*Id.* ¶ 58.)

In their fraudulent misrepresentation claim, Plaintiffs assert that Lift Bridge misrepresented its ownership of trade secrets for the purpose of inducing Lyvly to issue an ownership interest to Lift Bridge. (*Id.* ¶¶ 96–99.)  Plaintiffs further allege that they reasonably relied on Lift Bridge's representations, to their detriment. (*Id.* ¶¶ 98–101.)

### B.      Procedural Background

The parties have engaged in other litigation, including a lawsuit in Washington County, Minnesota District Court, Court File No. 82-CV-23-4837, in which the plaintiffs in that case—Mr. Wood, Mr. Heaberlin, and "Tutus Founder Inc."—asserted claims for fraud and breach of fiduciary duty against Lift Bridge. (*See* Sullivan Decl. [Doc. No. 59], Ex. A (Verdict Form).)  The fraud claim alleged that Lift Bridge had failed to fully and accurately disclose information about a City of Stillwater moratorium against the sale of products containing CBD, as well as the effect of the moratorium on the parties' joint business venture. (*Wood v. Lift Bridge Brewing Techs., LLC*, No. 82-CV-23-4837 (Am. Compl. ¶¶ 171–83 (Wash. Cnty. Dist. Ct. Feb. 9, 2024).)  The breach of fiduciary duty claim alleged that Lift Bridge had lured the plaintiffs into a joint venture that it knew could not be performed because of the moratorium, thereby diverting the plaintiffs from becoming significant business competitors. (*Id.* ¶¶ 142–63).  The case proceeded to trial, and on March 27, 2026, the jury found Lift Bridge liable on both the fraud claim, (Verdict

Form at Questions B.1–7), and on the breach of fiduciary duty claim. (*Id.* at Questions A.1-4.) The jury awarded the plaintiffs $1.8 million in compensatory damages. (*Id.*)

In this action, Lift Bridge argues that it is entitled to summary judgment on Plaintiffs' claims for misappropriation of trade secrets and fraud. (Def.'s Summ. J. Mem. [Doc. No. 50] at 22–39.) Lift Bridge's Summary Judgment Motion was filed on March 16, 2026, prior to the jury's verdict in the Washington County action.

In Plaintiffs' Memorandum in Opposition to Summary Judgment, filed after resolution of the Washington County case, Plaintiffs point to the state court verdict and recollected trial testimony, arguing that this Court should either deny Lift Bridge's Summary Judgment Motion outright under Federal Rule of Civil Procedure 56(a) due to genuine disputes of material fact or deny/defer ruling on it under Rule 56(d) because facts presented at trial were previously unavailable to Plaintiffs and are necessary to respond to Lift Bridge's Motion for Summary Judgment. (Pls.' Opp'n/R. 56(d) Mot. [Doc. No. 57] at 9.)

In support of Plaintiffs' request, they submit the sworn Declaration of Tim Sullivan. Mr. Sullivan, who is Plaintiffs' counsel, recalls certain testimony from the Washington County trial, set forth in his Declaration, and notes that a trial transcript is not currently available. (Sullivan Decl. ¶ 6.) Plaintiffs also submit the sworn Declaration of Jon Wood, Lyvly's Chief Executive Officer [Doc. No. 58], who attended the entire Washington County trial as a named plaintiff. Mr. Wood reviewed Mr. Sullivan's Declaration and states that his recollection of the trial testimony is the same as Mr. Sullivan's in all material respects. (Wood Decl. ¶ 4.)

Mr. Sullivan attests that the following facts were previously unknown to Plaintiffs prior to witness testimony in the Washington County trial:

(1) the May 9, 2022 Resolution of Lift Bridge's Board of Governors was signed much later, on or about September 7, 2022, and Lift Bridge's owners, Schwarz and Glynn, backdated it to May 9, purportedly on advice of counsel;

(2) the intellectual property asset list (Exhibit A to the Resolution) "did not exist on May 9, 2022, and was not created by Lift Bridge until on or about July 2022, after Lift Bridge was already engaged in a joint venture with Mr. Wood and Mr. Heaberlin and had been working within the joint venture on cannabinoid beverage recipes and manufacturing processes";

(3) multiple assets listed on Exhibit A did not exist on May 9, 2022, including the recipes called Apple Ginger and Cherry-POM, and a Standard Operating Procedure for manufacturing the recipes at commercial scale; and

(4) Lift Bridge backdated the May 9 Resolution and Exhibit A for purposes of tax avoidance, i.e., "to fabricate a paper trial showing the transfer of assets out of Lift Bridge on a date when Lift Bridge and successors-in-interest to the Exhibit A assets could argue to tax authorities that the assets were of relatively low taxable value at the time of the transfer."

(Sullivan Decl. ¶¶ 9–12; Pls.' Opp'n/R. 56(d) Mot. at 6.)

Plaintiffs assert that trial testimony related to the May 9, 2022 Resolution directly contradicts Mr. Schwarz's earlier deposition testimony, in which he testified that he contemporaneously signed the May 9, 2022 documents.  (Pls.' Opp'n/R. 56(d) Mot. at 7) (citing Sullivan Decl., Ex. D (Schwarz Dep.) at 72–73).  Plaintiffs contend that Lift Bridge is not entitled to summary judgment on Plaintiffs' fraudulent misrepresentation claim after admitting to the nonexistence of IP assets "that Lift Bridge used to gain half ownership of Lyvly."  (*Id.* at 7–8.)  In other words, Plaintiff argue that "the same fraud relating to the

May 9 transfer that Lift Bridge perpetuated on Jon Wood and Andy Heaberlin applies to Lyvly, Inc." (*Id.* at 8.)

As to Plaintiffs' misappropriation of trade secrets claim in this action, they likewise contend that Lift Bridge's trial testimony "confirms multiple glaring deficiencies in Lift Bridge's discovery in this matter." (*Id.*) Plaintiffs contend they learned at trial that Lift Bridge recently began selling a new line of cannabinoid-infused "wellness tonics"—Lift Bridge's BELIEVER series— that Plaintiffs believe is derivative of Lyvly's concepts, yet Lift Bridge provided no discovery regarding this development. (*Id.*)

Plaintiffs request that if the Court proceeds under Rule 56(d), they be given the opportunity to: (1) supplement their response when the Washington County trial transcript becomes available; and (2) conduct additional discovery relating to Lift Bridge's admissions at trial.[2] (*Id.*)

In Lift Bridge's Reply, it argues that Plaintiffs' request for relief under Rule 56(d) is based on a false premise about new admissions in the Washington County trial. (Def.'s Reply [Doc. No. 61] at 2.) Lift Bridge argues that Plaintiffs do not identify new issues.

_____

[2] Plaintiffs assert that Lift Bridge has failed to provide discovery concerning the following categories of information: (1) Lift Bridge's standard manufacturing process, if any, for commercial production of cannabinoid beverages as of May 9, 2022, in light of recent trial testimony that some of the assets that Lift Bridge purportedly transferred at that time did not exist; (2) documents relating to the BELIEVER series; (3) documents showing any differences in the manufacturing processes for the Lyvly beverages as compared to Lift Bridge's own cannabinoid beverages; (4) references to cannabinoid beverages in pitch decks or other materials designed for investors or prospective investors in Lift Bridge and/or its upcoming new manufacturing facility in Hudson, Wisconsin; and (5) revenue and other financial information relating to Lift Bridge's sales of its own cannabinoid beverages for calendar year 2025 and beyond. (Pls.' Opp'n /R. 56(d) Mot. at 16.)

(*Id.* at 2–3.)  Rather, it asserts that Plaintiffs knew about these issues when they filed their Amended Complaint, but failed to propound related discovery.  (*Id.* at 3.)  For example, Lift Bridge cites Mr. Glynn's August 2024 deposition testimony, in which he testified that he signed the May 9 Resolution in September 2022, and it further contends that in Mr. Schwarz's deposition, he was never asked about the Resolution specifically.  (*Id.* at 7–8.)  As to Plaintiffs' claim that Lift Bridge sought to evade taxes, Lift Bridge asserts that Plaintiffs were aware of certain tax implications related to the LOI "because their lawyers worked on it" by reviewing the transaction documents and approving the tax structure.  (*Id.* at 8–9.)  In addition, Lift Bridge contends that Plaintiffs have misled the Court about the materiality of the requested discovery.  (*Id.* at 3–4.)  Lift Bridge urges the Court to rule on its Motion for Summary Judgment, and reasserts that it is entitled to summary judgment on Plaintiffs' claims.

## II.    DISCUSSION

### A.    Rule 56(d)

Again, because Plaintiff's Memorandum in Opposition to Summary Judgment expressly seeks relief under Rule 56(d), the Court construes it as a Motion for Relief under that rule.  Under Rule 56,

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In order for the Court to grant such relief, Plaintiffs must "show 'what specific facts further discovery might unveil.'"  *United States ex rel. Bernard v.*

*Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (quoting *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 911 (8th Cir. 1999)).  To warrant additional time for discovery, the nonmovant must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (quotation omitted); *see also Janis v. Biesheuvel*, 428 F.3d 795, 800 (8th Cir. 2005) (explaining that "[a] party invoking [Rule 56(d)'s] protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.") (quotation omitted).

The Court finds that the sworn Sullivan and Wood Declarations meet the standard for relief under Rule 56(d) by proffering essential facts that were previously unavailable to the nonmovants, and for which Plaintiffs require additional time to conduct discovery in order to fully and fairly address Lift Bridge's arguments.  Based on the record, the parties do not appear to have been dilatory in their prior discovery efforts.  (*See* Jan. 5, 2026 Order [Doc. No. 47] granting in part, and denying in part, cross-motions to compel.)  The Sullivan Declaration explains why testimony from the recent Washington County trial impacts Plaintiffs' claims for fraudulent misrepresentation and misappropriation of trade secrets.  (Sullivan Decl. ¶¶ 8–21; *see also* Pls.' Opp'n/R. 56(d) Mot. at 8.)  Plaintiffs have identified

particular categories of information that they seek to obtain, and have indicated that such evidence exists. *Toben*, 751 F.3d at 895

While Lift Bridge disputes the relevance of the information and Plaintiffs' characterization of the record, the Washington County trial verdict, reached after Lift Bridge filed the instant motion, but before Plaintiffs filed their response, involved common issues of fact and law. Testimony from that trial is relevant to overlapping issues here, and some of that testimony appears to contradict testimony in the record of this case. Lift Bridge's disagreement with Plaintiffs' characterization of the Washington County testimony and the underlying facts underscores the materiality of the disputed issues. Moreover, Lift Bridge will have a full opportunity, if it chooses to do so, to move for summary judgment with the benefit of that information.

The Court finds that, under these unique circumstances, Plaintiffs have not had a full and fair opportunity to obtain and present relevant facts in opposition to summary judgment. Relief under Rule 56(d) is appropriate, and the Court therefore dismisses without prejudice Lift Bridge's Motion for Summary Judgment. The parties shall meet and confer, then consult with Magistrate Judge Bullard about the appropriate timeline for obtaining the necessary discovery. After the discovery is gathered, they may file new dispositive motions, with the benefit of a complete record.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

10

1.    Defendant Lift Bridge Brewing Technologies LLC's Motion for Summary Judgment [Doc. No. 48] is **DENIED WITHOUT PREJUDICE**.

2.    Plaintiffs Lyvly, Inc., and Tutus Holdings, Inc.'s Opposition Memorandum, which the Court construes as its Motion for Relief Under Rule 56(d) [Doc. No. 57], is **GRANTED**.

3.    The hearing on Defendant's Motion for Summary Judgment is hereby **CANCELLED**.

4.    The parties are **ORDERED** to contact Magistrate Judge Bullard's chambers to schedule a status conference and establish the schedule for additional discovery, limited to issues and testimony raised in the Washington County trial.


Dated: April 24, 2026                                    s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States District Judge

11